UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LOUISIANA FISH FRY PRODUCTS, LTD.

VERSUS

BRUCE FOODS CORPORATION

CIVIL ACTION

NO. 11-cv-557

### RULING ON PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANT'S COUNTERCLAIMS

This matter is before the Court on a Second Motion for Partial Summary Judgment Regarding Defendant's Counterclaims (Doc. 47) by the Plaintiff, Louisiana Fish Fry Products, Ltd. ("LFFP"). The Motion is opposed (Doc. 49), and LFFP filed a reply (Doc. 50). Oral argument is unnecessary. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1338.

I.   Background

This case involves a trademark dispute between two companies using "Louisiana" in their product names for batter mixes. LFFP began operating in Baton Rouge in 1983 selling seasoned batter mixes under the brand name Louisiana Fish Fry Products. LFFP occupies a market-leading position in the sale of batter mixes for the fried food product segment of the seasoned coatings market,[1] according to data from Symphony IRI Group. By March 2004, LFFP acquired trademark numbers 2,786,198 and 2,827,571 to its name and logo, and by August 2009, those registered trademarks became incontestable, according to the United States Patent and Trademark Office, under 15 U.S.C. § 1065.

---

[1] Shake & Bake is the overall market leader in the seasoned coatings market, but as its name suggests, its products are batter mixes intended for use with baked foods, not fried foods.

1

LFFP's president, William Pizzolato, succeeded to that position after his father, company founder Anthony Pizzolato, Sr., died in 2001. Anthony Pizzolato, Sr., had the most knowledge of how and why LFFP selected the brand name. More corporate knowledge of LFFP's origins was lost when a fire destroyed many of its records in December 2006.

Bruce, based in New Iberia, Louisiana, has used the "Louisiana" moniker in its hot sauce products, entitled The Original "Louisiana" Hot Sauce, for many years. Bruce's use of "Louisiana" in its hot sauce pre-dates all of LFFP's uses, and LFFP knew since its formation in 1983 of Bruce's use. LFFP has also used its brand name in conjunction with hot sauce since at least 1990. In the late 1980s, Bruce entered the batter mix market and promoted its batter mix products under names such as "Cajun King" and "Cajun Injector." Likewise, as a business competitor, Bruce knew of LFFP's use of "Louisiana" in its batter mixes since the late 1980s.

From the 1990s until at least 2007, LFFP and Bruce attended many of the same trade shows and industry meetings, where representatives from both companies inevitably interacted. Apart from close geographic proximity, representatives from both companies participated in a state-sponsored committee which eventually produced the "Certified Cajun" name and label, a signifier of authentic Louisiana products to distinguish those products from so-called "fake Cajun products."

In May 2011, Bruce launched a new line of batter mixes using the brand name from its hot sauce, The Original "Louisiana." LFFP filed this trademark action on August 16, 2011, as a result, asserting four claims of trademark infringement, unfair competition, and trademark dilution. Complaint, Doc. 1. Bruce asserts counterclaims

against LFFP grounded in the common law of trademark infringement and unfair competition and under Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1). Answer with Counterclaims, Doc. 10.  LFFP previously moved for summary judgment on Bruce's counterclaims based on the equitable defense of laches, which the Court denied, holding that to make a laches determination, the Court would have to evaluate infringement and conduct an inquiry into the likelihood of confusion between the marks, such an inquiry was premature since it would require ruling on material facts related to confusion that were not undisputed at that point, and judicial economy favored resolving LFFP's laches defense alongside the other claims in this case, the time at which likelihood of confusion between marks will be factually established or refuted.  Doc. 40. LFFP now re-urges its motion for partial summary judgment.

## II.   Motion Standards

Bruce argues the instant Motion is either an untimely motion for reconsideration or is barred by the law-of-the-case doctrine.  LFFP is partially re-urging a Motion that was denied, so the instant Motion is in part a motion for reconsideration.  However, there is no bar on the Court reconsidering its previous summary judgment ruling.  Under Federal Rule of Civil Procedure 54(b), "a court retains jurisdiction over all the claims in a suit and may alter any earlier decision at its discretion until final judgment has been issued on a claim or on the case as a whole." *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. Sept. 23, 2002). Furthermore, the law-of-the-case doctrine does not bar the instant Motion, since "in civil cases a district court is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions, as those

rulings are not immutable and lack res judicata effect." *United States v. Palmer*, 122 F.3d 215, 220–221 (5th Cir. 1997).

Final judgment has not been issued in this case, so the parts of the instant motion that constitute a motion for reconsideration are properly considered under Rule 54(b). District courts have considerable discretion in deciding whether to reconsider an interlocutory order. Kemp *v. CTL Distribution, Inc.*, No. 09-1109, 2012 U.S. Dist. 860404, at *3 (M.D. La. March 13, 2012). Although courts are concerned with principles of finality and judicial economy, "the ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Georgia Pacific, LLC v. Heavy Machines, Inc.*, No. 07-944, 2010 U.S. Dist. WL 2026670, at *2 (M.D. La. May 20, 2010). However, a motion for reconsideration based upon the same arguments only serves to waste the valuable resources of the court. *Id.* "[R]ulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration." *State of La. v. Sprint Communications Co.*, 899 F. Supp. 282, 284 (M.D. La. Sept. 8, 1995).

The summary judgment standard applies to the part of the instant motion raising new issues. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is

insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

### III. Analysis

LFFP argues a determination of likelihood of confusion is unnecessary to reach a finding of laches and that judicial economy requires deciding this question now, and submits evidence of likelihood of confusion. In the alternative, LFFP argues Bruce's counterclaims are precluded by the incontestable status of LFFP's registrations. Bruce responds that LFFP fails to demonstrate why the Court should resolve the question of laches before it determines Bruce's counterclaim for infringement, LFFP has failed to establish infringement, Bruce's counterclaims are not foreclosed by the incontestable status of the LFFP registrations, and judicial economy favors denying the Motion.

A.  Laches Reconsideration

LFFP argues, based on *Patsy's Brand Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209 (2d Cir. 2003), a Second Circuit opinion that is not mandatory authority for this Court, that a laches determination can be made without looking at likelihood of confusion. As this Court held in its previous summary judgment ruling, laches "delay should be measured from the time the plaintiff had 'ample opportunity' to discover the defendant's *infringement*." *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 (5th Cir. 1982). Infringement is nothing more than an inquiry into likelihood of confusion. *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45–46 (5th Cir. 1975). "Noninfringing use of a mark is not relevant to a defense of laches." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). The law "requires LFFP to show enough possibility of confusion to trigger the delay period, which begins to run once confusion (and thus infringement) could arise." Doc. 40, at 7–8. As such, a likelihood of confusion analysis is necessary to determine when the delay period began. Hence, *Patsy's* and LFFP's argument that a laches determination can be made without looking at likelihood of confusion is unavailing.

LFFP further argues that even if the Court must determine likelihood of confusion in order to determine laches, it presents sufficient evidence for likelihood of confusion to proceed to a trier of fact. The parties agree likelihood of confusion is an issue for the trier of fact. Since likelihood of confusion is an issue for the trier of fact, and a laches determination cannot be made until a likelihood of confusion determination is made, the Court cannot rule on the merits of LFFP's laches argument at this time. This is especially true since Bruce argues no infringement occurred, and its counterclaims are

6

contingent on a finding of infringement. As the Court reached the correct conclusion in its original summary judgment ruling on laches, reconsideration is denied.

### B. Effect of Incontestable Status of LFFP Registrations

LFFP argues its incontestable trademark registrations are for precisely the marks and goods which Bruce contends infringe in its counterclaims, so Bruce's counterclaims are barred by 15 U.S.C. §§ 1065 and 1115(b) insofar as Bruce seeks to preclude LFFP from using the marks with the goods for which the marks are registered. Bruce asserts that the marks are not incontestable, since they are generic, and all of its counterclaims are under Louisiana common law, which is an exception to incontestability.

> To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit filed under the provisions of section 1065 of this title . . . .

15 U.S.C. § 1115(b). Section 1065 includes an exception, stating an incontestable mark is contestable if it "infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark." 15 U.S.C. § 1065. However, "no incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered." 15 U.S.C. § 1065(4). "In any action involving a registered mark the court may . . . order the cancelation of registrations, in whole or in part . . . ." 15 U.S.C. § 1119. "One such ground is that the trademark is generic or has become the 'generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or

7

service.'" *Hidden Values, Inc. v. Wade*, 2012 U.S. Dist. 1836087, at *11 (N.D. Tex. May 18, 2012) (quoting 15 U.S.C. § 1064(3)).  Bruce does not contest that both of LFFP's registrations expressly recite "batter mixes" in their listed goods and services, or that the Section 1065 declaration filed for each registration included all of the goods in the original registration.  The Court's inquiry therefore begins with Bruce's genericness argument.

1. Genericness

The parties agree that genericness is a challenge available to Bruce.  However, LFFP does not seek to bar a genericness claim by Bruce, and Bruce fails to argue or establish that maintaining or creating a genuine issue of material fact as to a genericness claim precludes the incontestable status of LFFP's trademark registrations from barring its counterclaims.[2]  As such, evaluation of the parties' genericness arguments is not necessary to determine the effect of the incontestable status of LFFP's registrations, and the Court will not undertake such an evaluation.

2. Exception for Claims Arising Under Law of State or Territory

Bruce argues its claims arise under Louisiana common law, while LFFP argues Louisiana common law trademark claims do not exist.  Bruce presents recent and not-so-recent Louisiana cases in support of its argument.  LFFP cites a Western District of Louisiana case and the Louisiana Trademark Act, La. R.S. 51:211, *et seq.*, in support of its argument.  LFFP further argues the rulings cited by Bruce were issued after enactment of the Louisiana Trademark Act and involve trade names, while Bruce's claims are not for infringement of trade names.

---

[2] The Court reaches no opinion as to whether Bruce pled or maintains a genericness claim as one of its counterclaims, as the issue is not before the Court.

8

It is clear that the incontestable status of LFFP's registrations protects the marks from challenge based on a presumption of validity. *Union Nat. Bank of Tex., Laredo, Tex. v. Union Nat. Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 n. 6 (5th Cir. 1990). Therefore, to the extent Bruce's counterclaims do not fall into the state or territorial law exception, they are not viable.[3]  *Wolfe v. Barnett*, 24 La. Ann. 97, 99 (La. 1872), confirms in the least that a Louisiana common law trademark infringement claim existed at some time.[4]  The only relevant authority presented as to whether Louisiana common law trademark claims still exist, *Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*, 756 F. Supp. 280, 283 (W.D. La. Feb. 15, 1991), held "[t]here is no 'common law' cause of action for trademark infringement or unfair competition under Louisiana law."[5]  *Matrix Essential* cited no authority for this conclusion. *Id.* This Court will not blindly follow the unsupported holding of another district court regarding Louisiana law. Consequently, the Court will not say Bruce's counterclaims do not arise under the law of any state or territory and do not fit the accompanying exception to contestability.

### IV.   Conclusion

Accordingly, Louisiana Fish Fry Products, Ltd.'s Second Motion for Partial Summary Judgment Regarding Defendant's Counterclaims (Doc. 47) is **DENIED**.

Signed in Baton Rouge, Louisiana, on June 6, 2013.

**JAMES J. BRADY, DISTRICT JUDGE**

---

[3] The Lanham Act lists other defenses to the conclusive right to use a registered mark, but Bruce does not assert any of these defenses. 15 U.S.C. § 1115(b).

[4] The portions of the other cases cited by Bruce, *Louisiana Granite Yard, Inc. v. LA Granite Countertops, L.L.C.*, 45,482 (La. App. 2 Cir. 8/18/10); 47 So. 3d 573, 579, and *Straus Frank Co. v. Brown*, 169 So. 2d 77, 79 (La. 1964), do not confirm that Louisiana common law trademark claims still exist.

[5] The other authority presented by LFFP does not substantiate LFFP's argument that Louisiana trademark claims only exist under the Louisiana Trademark Act, not under common law.